UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 18 CR 185 |
| v. | ) | |
| | ) | Judge Gary Feinerman |
| TOBIAS DIGGS | ) | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS GPS LOCATION INFORMATION

The UNITED STATES OF AMERICA, through JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, hereby responds to defendant Tobias Diggs's motion to suppress GPS location information. The government respectfully requests that this Court deny defendant's motion, without a hearing, because defendant did not have a reasonable expectation of privacy in GPS location data voluntarily provided to a third party and, even if defendant did have such an expectation, (1) law enforcement acted in good faith when securing that data through the consent of the third party, and (2) defendant abandoned any interest in the GPS location information when he abandoned the vehicle to which that GPS location information was tied.[1]

### BACKGROUND

On March 17, 2017, at approximately 10 a.m., three robbers entered Razny Jewelers in Hinsdale, Illinois. They brandished firearms, handcuffed and assaulted

---

[1] Defendant has also moved to suppress his post-arrest statement to law enforcement. Dkt. No. 48. The government will not rely on that post-arrest statement at trial and thus that motion by defendant is moot.

1

employees, and stole over $200,000 worth of jewelry. Video surveillance from just before the robbery took place showed the robbers arriving at Razny Jewelers in a silver and blue 2003 Lexus RX, bearing Michigan license plate number DPA 8960. The Lexus was driven by a fourth individual, who did not exit the vehicle, and who was not the defendant. The three robbers fled in the same Lexus, driven by a fourth individual; again, the getaway driver was not the defendant.

After searching various databases, law enforcement determined that Individual A was the Lexus' registered owner. On March 23, 2017, detectives from the Hinsdale Police Department interviewed Individual A. Individual A confirmed for law enforcement that she was the Lexus' registered owner, but said she did not know where it was located. Individual A specified that she had not seen the Lexus in two weeks. Individual A told law enforcement that the Lexus may have been taken to a repair shop, but she did not know by whom.

Three days later, on March 26, 2017, detectives from the Hinsdale Police Department again interviewed Individual A. Initially, Individual A again told law enforcement that she did not where the Lexus was located, adding: "If I knew where my car was, I would go get it because I would like to have a car." Later in the interview, Individual A told law enforcement that she left her Lexus parked at a residence in Matteson, Illinois, which law enforcement later identified as an address where defendant and Individual A occasionally resided.

During the same March 26, 2017, interview, Individual A eventually told law enforcement that she spoke to defendant sometime during the day on March 17, 2017,

the day of the robbery. During that conversation, defendant instructed Individual A to come to the city to pick up her car. According to Individual A, defendant told her that he and "Mac" had just "hit a J spot," meaning a jewelry store, and that Individual A's Lexus was "heated up" and "all over the news." Individual A, who was staying with her parents in Michigan at the time, had not been able to travel to Illinois to retrieve the Lexus since then and therefore had not seen the Lexus since at least March 17, 2017.

On March 29, 2017, law enforcement issued an "alert" regarding the Lexus on multiple databases, asking any individual with information about the Lexus to contact the Hinsdale Police Department. Five days later, on April 4, 2017, Individual A called Headers Auto Sales, a used car dealership in Mishawka, Indiana. Individual A had purchased the Lexus from Headers in July 2016, although in March 2017, Individual A was still making weekly payments towards the Lexus' purchase. *See* Ex. A at 1-2. Individual A told a Headers employee that the Lexus had been stolen. When the employee asked Individual A for a police report to support her claim, Individual A said she would have to call back.

That same day, the Headers employee who spoke to Individual A put information regarding the Lexus into a database and found the alert previously issued by Hinsdale police. The Headers employee then contacted a Hinsdale police detective and told the detective that the Lexus was equipped with an electronic tracking device. Indeed, when Individual A purchased the Lexus from Headers, the terms and conditions of her payment contract contained the following provision:

3

> **ACKNOWLEDGEMENT OF PURCHASE OF VEHICLE CONTAINING ELECTRONIC TRACKING DEVICE.** If your vehicle has an electronic tracking device, you agree that we may use this device to find the vehicle.

Ex. A at 4.

Using information from the Lexus' already installed electronic tracking device, the Headers employee then told the Hinsdale detective that the Lexus was located in a residential garage in Chicago, Illinois. The Headers employee also provided the detective with access to the GPS location information associated with the Lexus. More specifically, the Headers employee gave the detective login credentials that the detective could use to access a website for Asset Track GPS Systems, where GPS location data related to the Lexus was stored. The detective visited this website, and from there, was able to download GPS location data for the Lexus from March 1, 2017, through April 4, 2017. That data showed the Lexus in the vicinity of Razny Jewelers on March 15 and 16, 2017, the days leading up to the robbery, as well as March 17, 2017, the day of the robbery itself.[2]

Law enforcement was able to link defendant to the Lexus in a number of ways. In addition to Individual A's statements regarding her conversation with defendant on March 17, 2017, law enforcement determined that, on an earlier occasion, defendant had been arrested while driving the Lexus. In addition, Individual A testified in the grand jury that defendant regularly drove the Lexus, with her knowledge. Finally, on April 4, 2017, law enforcement found the Lexus in a Chicago

---

[2] Although law enforcement prepared a subpoena for the GPS location information, it never served it in light of the information Headers voluntarily provided.

garage associated with a residence where Individual B lived; Individual B is the mother of defendant's child. GPS location data established that the Lexus had been in Individual B's garage continuously since March 17, 2017.

## ARGUMENT

### I. Defendant Does Not Have a Reasonable Expectation of Privacy in GPS Location Data Voluntarily Turned Over to a Third Party.

Under the Fourth Amendment, a "search" occurs when "the government violates a subjective expectation of privacy that society recognizes as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33 (2001). Defendant argues that he had both a subjective and objectively reasonable expectation of privacy in his physical location, as captured by the GPS data associated with the Lexus. Defendant's motion, however, ignores the fact that the GPS location information at issue had been voluntarily turned over to a third party, Headers Auto Sales, by Individual A, the Lexus' registered owner.[3]

In *United States v. Miller*, 425 U.S. 435 (1976), and *Smith v. Maryland*, 442 U.S. 735 (1979), the Supreme Court "developed a bright-line application of the reasonable-expectation-of-privacy test that is relevant here." *See United States v.*

---

[3] This argument assumes, as an initial matter, that defendant has sufficient standing with respect to the Lexus to bring a Fourth Amendment claim related to it. *See Rakas v. Illinois*, 439 U.S. 128, 134 (1978) (Fourth Amendment rights are personal rights which "may not be vicariously asserted"). It is not clear that defendant actually does. Individual A was the Lexus' registered owner as well as the individual who attempted to report the car as stolen. And while some evidence indicates that defendant had driven the Lexus on previous occasions, other evidence indicates that defendant was not the driver of the Lexus to and from Razny Jewelers on the day of the robbery and that defendant later abandoned the Lexus altogether. If defendant lacked a sufficient possessory interest in the Lexus, he also lacks a sufficient privacy interest in its movements. *See infra* at Section III.

*Caira*, 833 F.3d 803, 806 (7th Cir. 2016), *cert. denied*, 138 S. Ct. 2700 (2018). "In what has come to be known as the 'third-party doctrine,' the Court held that 'a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties . . . even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." *Id.* (citing *Smith*, 442 U.S. at 743-44).

In *Miller*, the defendant had no reasonable expectation of privacy in his banking records, even though they contained sensitive financial information, because he had voluntarily shared the information with a third party—the bank. 425 U.S. at 442-44. And in *Smith*, the defendant had no reasonable expectation of privacy in the phone numbers he dialed from his home phone because, as a necessary step in placing phone calls, he shared that information with the phone company. 442 U.S. at 743-44. As the Seventh Circuit summarized in *Caira*, "[e]ven if such defendants had a *subjective* expectation of privacy, *Miller* and *Smith* held that once information is voluntarily disclosed to a third party, any such expectation is 'not one that society is prepared to recognize as reasonable.'" 833 F.3d at 806 (citing *Smith*, 442 U.S. at 743 (internal quotation marks and citation omitted)). As a result, in those cases, the government's pursuit of the information from a third party "was not a search, and no warrant was required." *Id.*

More recently, in *Caira*, the Seventh Circuit applied the third-party doctrine to the government's use of a subpoena to obtain from a third-party internet service provider the I.P. addresses that defendant used on approximately 52 days in order to

6

access particular websites and to send and receive email communications. *Id.* at 805. The government then used those I.P. addresses to determine the physical locations of the various computers defendant used to access the relevant websites and send the relevant communications and, in turn, to locate defendant's home. *Id.* Much like defendant here, the defendant in *Caira* maintained that he had a reasonable expectation of privacy in his I.P. addresses because that information could be used— and indeed, was used—to track his physical location. *Id.* at 806. *Caira* held, consistent with every other federal appeals court to have addressed the issue, that the defendant voluntarily provided his I.P. address to Microsoft, his third-party internet service provider, "every time he logged in . . . specifically so that Microsoft could send back information to be displayed where [defendant] was physically present." *Id.* at 806-07; *see also id.* (collecting cases). As a result, *Caira* held, the district court had properly denied defendant's motion to suppress under the third-party doctrine advanced by *Miller* and *Smith*. *Id.*

Here, the Lexus was equipped with an electronic tracking device that captured GPS location information accessible to Headers, the third party that sold the Lexus to Individual A and who remained the Lexus' lienholder while Individual A still had outstanding payments on the vehicle. Ex. A. Individual A's contract with Headers alerted her to the potential presence of an electronic tracking device in the Lexus. While the contract's language indicated that the information would be used only to locate the Lexus, not to determine its prior movements, under the third-party doctrine "a person has no legitimate expectation of privacy in information he

voluntarily turns over to third parties . . . *even if the information is revealed on the assumption that it will be used only for a limited purpose.*" *Smith*, 442 U.S. at 743-44 (emphasis added). In short, Individual A, and in turn defendant, cannot have a reasonable expectation of privacy in information voluntarily provided to Headers.

This outcome is additionally true where the third-party entity who gave Hinsdale detectives the tools and permission they needed to access the Lexus' GPS location information had the apparent authority to do so. *See United States v. Mosby*, 541 F.3d 764, 767 (7th Cir. 2008) ("[P]olice may reasonably search without a warrant when a person with authority voluntarily consents to the search, though a lack of apparent authority would invalidate the search."); *United States v. Alexander*, 573 F.3d 465, 471 (7th Cir. 2009) (third party has apparent authority "when the facts available to an officer at the time of a search would allow a person of reasonable caution to believe that the consenting party had authority over the premises"). Here, Headers was the Lexus' lienholder, had access to its GPS location information, had informed Individual A that it had access to that information, and shared access to that information with the Hinsdale detective by providing the detective with the necessary login credentials. These facts gave law enforcement reason to believe Headers had apparent, if not actual, authority to authorize law enforcement to access the GPS information.

To be sure, the Supreme Court recently limited the scope of the third-party doctrine in the context of historical cell-site location information ("CSLI"). *See Carpenter v. United States*, No. 16-402, 585 U.S. –, 2018 WL 3073916 (June 22, 2018).

8

But *Carpenter* squarely and specifically involved CSLI, not GPS location information. In concluding that law enforcement must obtain a warrant before they can obtain cell-site records for a cellular phone, *Carpenter* stressed the "novel circumstances" presented by "a society in which a phone goes wherever its owner goes, conveying to the wireless carrier not just dialed digits, but a detailed and comprehensive record of the person's movements." *Id.* at *9. In that vein, *Carpenter* distinguished the collection of historical CSLI from the collection of GPS location information:

> In fact, historical cell-site records present even greater privacy concerns than the GPS monitoring of a vehicle we considered in *Jones*. Unlike the bugged container in *Knotts* or the car in *Jones*, a cell phone—almost a feature of human anatomy—tracks nearly exactly the movements of its owner. While individuals regularly leave their vehicles, they compulsively carry cell phones with them all the time. A cell phone faithfully follows its owner beyond public thoroughfares and into private residences, doctor's offices, political headquarters, and other potentially revealing locales.

*Id.* at *10 (internal citations omitted); *see also id.* (citing *Cardwell v. Lewis*, 417 U.S. 583, 590 (1974) (plurality opinion) ("A car has little capacity for escaping public scrutiny.")). In short, *Carpenter* did not contract the third-party doctrine with respect to GPS location information voluntarily provided to a third-party, and instead distinguished the collection of such information from the collection of historical CSLI, which it viewed as presenting "even greater privacy concerns." *Id.*

Moreover, even if *Carpenter* were interpreted to require a warrant for the acquisition of GPS location information in the hands of a third party, the GPS location information here was obtained pre-*Carpenter*. Therefore, suppression would not be the appropriate remedy because the government in good faith relied on pre-*Carpenter*

9

case law defining the scope of the third-party doctrine to obtain the GPS location information at issue. *See United States v. Curtis*, 901 F.3d 846, 848 (7th Cir. 2018) (affirming district court's denial of defendant's motion to suppress on good faith grounds where government, pre-*Carpenter*, collected 314 days of CSLI pursuant to the Stored Communications Act but without a warrant).

### II. Defendant Does Not Have a Fourth Amendment Claim Under *Jones*.

Defendant's motion to suppress relies heavily on the Supreme Court's decision in *United States v. Jones*, 565 U.S. 400 (2012), but *Jones* does not apply here.

*Jones* involved the government's attachment of a GPS tracking device to a vehicle without the knowledge or consent of the person being tracked. *Id.* at 402-03. The government there had obtained a warrant to install the GPS device on the vehicle, installed the device outside the time period and geographic area authorized by the warrant, installed it while on private property, and tracked the vehicle's movements for 28 days. *Id. Jones* held that the government's *attachment* of a GPS device and its use of the device to monitor the vehicle's movements, without a search warrant, violated the Fourth Amendment. *Id.* at 404-08. In its narrow holding, the Supreme Court concluded that the tracking information was inadmissible because the government had physically intruded on private property in the course of installing and using the GPS device and therefore the government had conducted a search for purposes of the Fourth Amendment. *Id.* at 404-08.

The holding in *Jones* does not extend beyond the specific situation where the government *installs* the GPS device and uses it to track the vehicle's movements. *See Caira*, 833 F.3d at 808 ("Justice Scalia's lead opinion applied a framework that is not relevant here."). Here, there was no physical intrusion by the government on private property in order to install a tracker on the Lexus.

Justice Alito's concurring opinion in *Jones* underscores how that decision's holding does not apply to the circumstances presented here. For example, Justice Alito wrote that based on the conclusion of *Jones*, "the Fourth Amendment applies ... because the officers installed the GPS device after respondent's wife, to whom the car was registered, turned it over to respondent for his exclusive use." 565 U.S. at 425. Justice Alito went on to observe that "if the GPS had been attached prior to that time, the Court's theory would lead to a different result." *Id.* "The Court proceeds on the assumption that respondent "had at least the property right of a bailee . . . but a bailee may sue for trespass to chattel only if the injury occurs during the term of the bailment." *Id.* As a result, Justice Alito explained, "if this GPS device had been installed before respondent's wife gave him the keys, respondent would have no claim for trespass—and, presumably, no Fourth Amendment claim either." *Id.*

The hypothetical scenario imagined by Justice Alito is akin to the scenario presented here. The electronic tracking device was installed in the Lexus prior to Individual A purchasing the car and therefore well before defendant may have driven it. Under the majority's decision in *Jones*, therefore, defendant has no claim for trespass and no Fourth Amendment claim either. *See also id.* at 426-27 (Alito, J.,

concurring) (recognizing that the majority decision, based as it is on "the law of trespass as it existed at the time of the adoption of the Fourth Amendment," may not recognize that a trespass has taken place in cases where law enforcement "activat[e] a stolen vehicle detection system that came with the car when it was purchased" because "[t]respass to chattels has traditionally required a physical touching of the property").

Certainly, as defendant argues, the concurring opinions in *Jones* recognize that an individual may have a reasonable expectation of privacy in his GPS location information. *See, e.g.*, *id.* at 414-16. But as defendant also concedes that discussion does not serve as the basis for the majority opinion in *Jones*. Dkt. No. 49 at 4. Moreover, *Jones* does not address the third-party doctrine and whether an individual's expectation of privacy in GPS location information extends to circumstances in which that information has been voluntarily provided to another entity. *See Caira*, 833 F.3d 803, 808-09 ("More fundamentally, *Jones* did not do away with the third-party doctrine. It had no occasion to, because the government used its own GPS device to track Jones's location—he had not shared his location with any third party.").

### III. Even If Defendant Had a Reasonable Expectation of Privacy in the Lexus' GPS Location Data, Defendant Abandoned That Interest When He Abandoned the Lexus.

Even if defendant had a reasonable expectation of privacy in the GPS location information associated with the Lexus, defendant abandoned that interest when he abandoned the Lexus. "Fourth Amendment protection does not extend to abandoned

property." *United States v. Rem*, 984 F.2d 806, 810-11 (7th Cir. 1993) (citing *Abel v. United States*, 362 U.S. 217, 241 (1960)). "'When a person voluntarily abandons property . . . he forfeits any reasonable expectation of privacy that he might have had in the property.'" *Id.* (quoting *United States v. Lee*, 916 F.2d 814, 818 (2d Cir. 1990)). "'The test for abandonment is whether an individual has retained any reasonable expectation of privacy in the object. This determination is to be made by objective standards.'" *Id.* (quoting *United States v. Jones*, 707 F.2d 1169, 1172 (10th Cir. 1983)).

Here, even assuming that defendant had an initial proprietary and privacy interest in the Lexus, defendant abandoned those interests when he abandoned the Lexus after the robbery on March 17, 2017. On that day, defendant called Individual A and instructed her to come pick up the car from a residential garage in Chicago. The Lexus remained in that garage for two more weeks before law enforcement recovered it. Indeed, when law enforcement located the Lexus, officers discovered that the door to the garage would not open. It was law enforcement, not defendant, who repaired the garage door in order to retrieve the Lexus, indicating that defendant had no plans to retrieve the Lexus himself.

Given these facts, defendant cannot claim an ongoing interest in the Lexus or its location data. *See United States v. Oakes*, 320 F. Supp. 3d 956, 961-62 (M.D. Tenn. 2018) (defendant cannot challenge, under the Fourth Amendment, "the collection of CSLI from a cell phone for which he *denies* the ownership, possession, control, use, and exclusion of others") (emphasis in original); *United States v. Carter*, No. Cr. 17-00129-BAJ-RLB, 2018 WL 1229757, at *3 (M.D. La. Mar. 9, 2018) (defendant making

13

a Fourth Amendment challenge "must continue to show a legitimate expectation of privacy in the area or item searched, as well as a possessory interest *at the time of the search*") (emphasis in original).

For this reason as well, defendant's efforts to suppress the GPS location information at issue fail.

## CONCLUSION

For the aforementioned reasons, the government respectfully requests that this Court deny defendant's motion without a hearing.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: */s/ Albert Berry III*
ALBERT BERRY III
Assistant United States Attorney
219 S. Dearborn Street
Chicago, Illinois 60604

Date: November 8, 2018