IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| United States of America, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 18 Cr 185-1 |
| | ) | |
| | ) | Hon. Gary Feinerman |
| Tobias Diggs, | ) | |
| Defendant. | ) | |

## DEFENDANT TOBIAS DIGGS'S REPLY IN SUPPORT OF HIS MOTION TO SUPPRESS GPS LOCATION INFORMATION OBTAINED WITHOUT A WARRANT

Defendant Tobias Diggs, through his undersigned attorney, respectfully submits this reply in support of his Motion to Suppress GPS Location Information Obtained Without a Warrant (ECF #49).

## DISCUSSION

In its response, the government effectively concedes that the investigating officers violated Mr. Diggs's constitutional rights by unlawfully interrogating him for roughly 12 hours despite his repeated assertions of his Fifth Amendment right to counsel. (Resp. at 1 n.1 (agreeing not to use post-arrest statement at trial).) The government also does not dispute (but fails to address) the fact that subpoenas the investigating officers used in this case expressly acknowledged that a "**Search warrant is required for GPS**" but the officers still proceeded to search and seize more than a month's worth of such GPS information without obtaining a warrant. (Motion Ex. 6, at 4 (emphasis in original).)

The government nevertheless asks the Court to excuse and condone the officers' decision to ignore this clear and plain directive to obtain a warrant, arguing

first that Mr. Diggs did not have a reasonable expectation of privacy in the GPS location information and secondly that the same investigating officers who unlawfully interrogated Mr. Diggs for 12 hours acted in "good faith" in obtaining the GPS location information without a warrant. The government's arguments should be rejected because they cannot be reconciled with the Supreme Court's most recent Fourth Amendment jurisprudence or the record in this case, and because the government falls far short of satisfying *its burden* of demonstrating that the investigating officers acted in good faith in obtaining the GPS location information without a warrant.

Accordingly, the Court should suppress all GPS location information obtained by the investigating officers, and all information subsequently obtained by use of this GPS location information.

### A. The Supreme Court's Recent Decision in *Byrd v. United States* Resolves the Standing Issue.

In its response, the government first raises the issue of whether Mr. Diggs has standing to challenge the unlawful use of GPS tracking information. It suggests that it is "not clear that defendant actually" does have standing because "[i]f defendant lacked a sufficient possessory interest in the Lexus, he also lacks a sufficient privacy interest in its movements." (Resp. at 5 n.1.)

The government's observations regarding standing are misguided and fail to account for the Supreme Court's decision last term in *Byrd v. United States*, 138 S. Ct. 1518 (2018), which the government does not address. In *Byrd*, the Court addressed whether an individual who is not listed as an authorized driver on the rental agreement of a car rented by another individual could have a reasonable

expectation of privacy in the rented vehicle. As a threshold matter, Justice Kennedy, writing for a unanimous Court, reiterated that "standing" is not a concept "distinct from the merits and 'is more properly subsumed under substantive Fourth Amendment analysis.'" *Id.* at 1530 (quoting *Rakas v. Illinos*, 99 S. Ct. 421, 426 (1978)). Accordingly, the relevant issue was not "standing," but rather whether the defendant could have had a reasonable expectation of privacy in a car rented by another person.

Justice Kennedy's opinion makes clear that the government's exclusive focus in this case on Mr. Diggs's "possessory interest" in the Lexus is misplaced because "it is by now well established that a person need not always have a recognized common-law property interest in the place searched to be able to claim a reasonable expectation of privacy in it." *Id.* at 1527. In this context, the Court clarified that the reasonable expectation of privacy test turns not on whether the defendant had an ownership interest in the vehicle, but on whether he had lawful possession and control of the vehicle, and the attendant right to exclude others. *Id.* at 1528.

That is clearly the case here. According to the government's own evidence, the Lexus was owned by Mr. Diggs's longtime girlfriend (and now wife) who expressly authorized him to drive the vehicle. In fact, the owner of the vehicle told investigating officers that *"defendant regularly drove the Lexus, with her knowledge."* (Resp. at 4 (emphasis added).) Pursuant to the Court's ruling in *Byrd,* the fact that the owner of the vehicle authorized Diggs to drive the vehicle is sufficient to establish a reasonable expectation of privacy and defeat the government's "standing" argument.

3

### B. The Supreme Court's Decision in *United States v. Jones* Confirms that Defendant Had a Reasonable Expectation of Privacy in the Movements of the Lexus.

While the Supreme Court's decision in *Byrd* establishes that Mr. Diggs had a reasonable expectation of privacy regarding the vehicle owned by his girlfriend, its earlier decision in *United States v. Jones*, 565 U.S. 400 (2012), confirms that his expectation of privacy extended to and encompassed the movements of the vehicle and its GPS location information. In trying to escape the application of *Jones*, the government again errs by focusing on inapplicable property law concepts. The government argues that *Jones* is not helpful to Diggs because "[u]nder the majority's decision in *Jones*. . . defendant has no claim for trespass and no Fourth Amendment claim either." (Resp. at 11.)

The government mistakenly overlooks the fact that *a majority of justices* in *Jones* recognized that an individual has a reasonable expectation of privacy in the long-term movements of his vehicle regardless of whether the installation of the GPS tracking device involved a trespass. As noted in the motion, the concurring opinions of Justices Sotomayor and Alito, joined by a total of five justices, concluded that the long-term monitoring of a vehicle's movements infringed on privacy interests protected by the Fourth Amendment because GPS technology "track[s] every movement that [an individual makes] in the vehicle he [is] driving" and "generates a precise, comprehensive record of a person's public movements that reflects a wealth of detail about her familial, political, professional, religious, and sexual associations." 565 U.S. at 430 (Alito, J., concurring) and 565 U.S. at 415 (Sotomayor, J., concurring).

The five concurring justices agreed that "the Fourth Amendment is not concerned only with trespassory intrusions on property" because "physical intrusion is now unnecessary to many forms of surveillance." *Id.* at 414-15 (Sotomayor, J., concurring). And they concluded that long-term GPS monitoring of a vehicle amounts to a search under the Fourth Amendment without regard to any claims of physical trespass because it "impinges on expectations of privacy." 565 U.S. at 415, 430-31 (Sotomayor, J., and Alito, J., concurring).[1]

Subsequent courts have recognized that *a majority of justices* in *Jones* concluded that GPS tracking infringes on reasonable expectations of privacy. In the Court's most recent opinion regarding location information tracking, Chief Justice Roberts noted that in *Jones* "five Justices agreed that longer term GPS monitoring of even a vehicle traveling on public streets constitutes a search." *Carpenter v. United States*, 138 S. Ct. 2206, 2220 (2018) (citing concurring opinions of Sotomayor and Alito). And even the Seventh Circuit opinion on which the government most heavily relies noted that "two concurring opinions [in *Jones*], signed by five Justices total" concluded that "'longer term' use of GPS technology constitutes a Fourth Amendment search." *United States v. Caira*, 833 F.3d 803, 808 (7th Cir. 2016) (7th Cir. 2016) (citing concurring opinions of Sotomayor and Alito).

---

[1] The government's reliance on Justice Alito's concurrence is puzzling because his opinion criticizes and rejects the property-based theory that the government advances here. *Id.* at 424 ("In sum, the majority is hard pressed to find support in post-*Katz* cases for its trespass based theory.").

5

C.  **The Supreme Court's Decision Last Term in *Carpenter v. United States* Forecloses the Government's Third-Party Argument.**

The government next invokes the third-party doctrine to argue against Mr. Diggs's reasonable expectation of privacy, claiming that his argument "ignores the fact that the GPS location information at issue had been voluntarily turned over to a third party." (Resp. at 5). The government's argument cannot be squared with the Supreme Court's decision last term in *Carpenter v. United States*, 138 S. Ct. 2206 (2018), or even the Seventh Circuit's pre-*Carpenter* decision in *Caira*.

In *Carpenter,* the Court addressed the reach of the third-party doctrine, and specifically whether it could defeat a reasonable expectation of privacy in cell phone location information (CSLI), which the Court noted "partakes of many of the qualities of the GPS monitoring we considered in *Jones*." *Id.* at 2216. "Much like GPS tracking of a vehicle, cell phone location information is detailed, encyclopedic, and effortlessly compiled." *Id*. The Court concluded that such location information is protected by the Fourth Amendment regardless of whether it implicates trespass or property principles, and regardless of whether the government uses information voluntarily provided to a third party. "Whether the Government employs its own surveillance technology as in *Jones* or leverages the technology of a wireless carrier, we hold that an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI." *Id.* at 2217. The Court emphasized that the third-party doctrine does not apply to location information because "[s]uch a chronicle implicates privacy concerns far beyond those considered in *Smith* and

6

*Miller*" (which are the two cases relied on by the government in its response). *Id.* at 2220; Resp. at 5-6.

The government nevertheless tries to avoid the obvious import of *Carpenter* by arguing that the Court's decision "squarely and specifically involved CSLI, not GPS location information" and the Court "did not contract the third-party doctrine with respect to GPS location information voluntarily provided to a third party." (Resp. at 9.) The government's arguments are not well founded.

The government first errs in suggesting that the third-party doctrine applies to GPS location information unless the Court "contracted" the third-party doctrine with respect to such information. That formulation conflicts with the Court's opinion in *Carpenter*, which made clear that the question was not whether the Court needed to contract or peel back the third-party doctrine, as the government suggests, but rather whether the third-party doctrine *could be expanded to reach location information tracking*. Chief Justice Roberts explained that "[t]he Government . . . is not asking for a straightforward application of the third-party doctrine, but instead a *significant extension* of it to a distinct category of information." *Id.* at 2219. And in rejecting the government's argument, the Court made clear that it was "*declin[ing] to extend* Smith and *Miller*" to the collection of location information. *Id.* at 2220 (emphases added).

In addition, as noted above and in the concurring opinions in *Jones*, GPS and CSLI information implicate the same core privacy concerns. The mere fact that CSLI may implicate "even greater privacy concerns" than GPS location information does not shield the government from the commands of *Carpenter*. The concurring opinions

7

in *Jones* make clear that GPS tracking reflects the same "seismic shifts in digital technology" that led the Court to reject the government's request to extend the third-party doctrine to cell phone location information. *Id.* at 2219. Indeed, there can be no serious dispute that GPS tracking produces an "exhaustive chronicle of location information," or that GPS location information is far closer to cell phone location information than the "limited types of personal information" at issue in *Smith* and *Miller*. *Id.* at 2219. And while the Court in *Carpenter* expressly noted that its ruling did not address "other business records that might *incidentally reveal location*," *id.* at 2220 (emphasis added), that is surely not the case with GPS tracking. Far from incidental, generating location information is the primary function of GPS tracking.

The government's argument that GPS should be distinguished because it is less revealing is ironic because it argued the opposite in *Carpenter*. In that case, the government sought to distinguish *Jones* by arguing that "the collection of CSLI should be permitted because the data is *less precise than GPS information*." *Id.* at 2218 (emphasis added). The Court rejected the government's argument, however, recognizing that "the accuracy of CSLI is rapidly approaching GPS-level precision." *Id.* at 2219.

The government's reliance on the Seventh Circuit's pre-*Carpenter* decision in *Caira* is misplaced because that case in fact emphasized the significant extent to which GPS tracking implicates the very privacy concerns that drove the Court's decision in *Carpenter*. The Seventh Circuit went to great lengths to distinguish the subpoenaed information in that case (I.P. address information) from the GPS tracking technology at issue in *Jones*, which by contrast provided a comprehensive picture of

8

a person's movements over an extended period of time. Relying on the concurring opinions in *Jones,* the Seventh Circuit noted that GPS tracking can monitor "every single movement," and so can reveal "trips to the psychiatrist, the plastic surgeon, the abortion clinic, the AIDS treatment center, the strip club, the criminal defense attorney, the by-the-hour motel, the union meeting, the mosque, synagogue or church, the gay bar and on and on." *Caira,* 833 F.3d at 808 (quoting concurring opinions of Sotomayor and Alito).

The court in *Caira* emphasized that the privacy interests implicated by I.P. address information were not nearly as compelling or in need of protection as GPS location information because the I.P. address information revealed only limited and static information about where a computer was used.

> But here, the government only received records of the I.P. addresses Caira used to log in to his Hotmail account. He did so from two unsurprising places: home and work. The government received no information about how he got from home to work, how long he stayed at either place, or where he was when he was not at home or work. On days when he did not log in, the government had no idea where he was. Plainly, the government had no "tracking device."

*Id.* at 808. For those reasons, the court criticized the defendant's attempted analogy to GPS tracking as an "unhelpful exaggeration." *Id.*

The Seventh Circuit's decision in *Caira* thus undermines rather than supports the government's argument. It explains why GPS location information implicates much greater privacy concerns than the "limited types of personal information" at issue in *Caira*, and also in *Smith* and *Miller*, which involved only bank records and pen registers. *See also Carpenter*, 138 S. Ct. at 2219 (discussing "limited capabilities of a pen register"). Accordingly, as in *Carpenter*, there is no basis to extend the third-

9

party doctrine to reach the "exhaustive chronicle of location information" that GPS tracking provides.[2]

### D. The Government Cannot Meet Its Burden of Establishing Good Faith.

The government does not dispute that it has the burden to demonstrate good faith, *see United States v. Harju*, 466 F.3d 602, 607 (7th Cir. 2006), but it falls far short of satisfying that burden. That is because this is exactly the type of case in which the deterrent effect of suppression is most needed. The investigating officers decidedly did *not* act in good faith in unlawfully interrogating Mr. Diggs for roughly 12 hours despite his repeated invocation of his Fifth Amendment rights. In addition, the subpoenas used by the investigating officers in this case expressly acknowledge that "**Search warrant is required for GPS.**" (Motion Ex. 6, at 4 (emphasis in original).) Accordingly, the record establishes that the investigating officers were aware that GPS tracking information required a warrant, but nevertheless chose to obtain it without one. This fact alone precludes a finding of good faith, and the government's failure to even address it is telling.

The only authority cited by the government in support of its good faith argument is *United States v. Curtis*, 901 F.3d 846 (7th Cir. 2018). But *Curtis* does

---

[2] The Court's decision in *Carpenter* resolves the government's argument regarding the electronic tracking device provision in the vehicle lease agreement because *Carpenter* holds that disclosure of such information to a third party does not defeat a reasonable expectation of privacy. But even if *Carpenter* did not apply, that lease provision would not defeat a reasonable expectation of privacy because it only suggests, as the government acknowledges, that the tracking device will be used to "find the vehicle." (Gov. Ex. 1, at 4.) It does not state, or even suggest, that the tracking device would be used to continuously monitor, track, and maintain detailed information about the movements of the vehicle over an extended period.

not support the government's argument, let alone satisfy its burden of demonstrating good faith. In *Curtis*, the court held only that "evidence obtained in good-faith reliance on a statute later declared unconstitutional need not be excluded." *Id.* at 848. But in this case, there is no claimed reliance on such a statute. Nor has the government pointed to any pre-existing circuit precedent that was relied on by the investigating officers or that could have excused their unconstitutional conduct. Indeed, the only evidence before the Court is the subpoena issued by the investigating officers, which expressly provided that "**Search warrant is required for GPS**."

Mr. Diggs respectfully submits that the factual record before the Court cannot support a finding of good faith, and the evidence must therefore be excluded. At a minimum, an evidentiary hearing would be necessary to determine whether the government has satisfied its burden of establishing the good faith of the investigating officers.[3]

### E. The Government's Abandonment Argument Is Both Factually and Legally Inapposite.

The government's final argument is that the GPS location information should not be suppressed because the "Fourth Amendment does not extend to abandoned

---

[3] The government also claims that the individuals who provided the GPS information to the investigating officers "had apparent, if not actual, authority to authorize law enforcement to access the GPS information." (Resp. at 8.) At the outset, this argument cannot be reconciled with the "**Search warrant is required for GPS**" instruction on the investigating subpoenas. But even if there were a factual basis, apparent authority is yet another property-based argument that has no bearing on GPS tracking and location information and that cannot be reconciled with the Supreme Court's decision in *Carpenter. See, e.g., United States v. Groves*, 530 F.3d 506, 509 (7th Cir. 2008) ("A warrantless search does not violate the Fourth Amendment if a person possessing, or reasonably believed to possess, *authority over the premises,* voluntarily consents to the search.") (emphasis added).

11

property." (Resp. at 12-13 (quoting *United States v. Rem*, 984 F.2d 806, 810-11 (7th Cir. 1993).) Relying on yet another inapplicable property-based doctrine, the government argues that Mr. Diggs abandoned his "proprietary and privacy interest in the Lexus" by parking it in a garage, leaving it there for two weeks, and failing to fix the broken garage door, which according to the government demonstrates that he had "no plans to retrieve the Lexus himself." (Resp. at 13.)

The government's abandonment argument is neither factually supported nor legally relevant. When the government located the vehicle, it was parked at 1-158 S. Vernon in Chicago, which the investigating officers "knew to be the house where Diggs' girlfriend named Jessica lived." (Motion Ex. 1, at 3.) The government's response further confirms that the garage where the Lexus was parked belonged "to the mother of defendant's child." (Resp. at 5.) Moreover, the government's investigation (based on the unlawfully obtained GPS data) revealed that Mr. Diggs's girlfriend, who resided at that residence, in fact drove the Lexus to work at Christ Hospital the evening of the robbery, and used it for the following two days. (Excerpt of Report HI17003287.7, attached as Exhibit 7, at 11.) None of these facts supports the government's abandonment theory. The mere fact that the Lexus was parked in the garage of Mr. Diggs's girlfriend, after she used the vehicle to go work, or that the garage door was, at some time, broken does not establish that Mr. Diggs abandoned the interests he had in the vehicle.

In addition, the government's abandonment theory has no bearing on the privacy interests Mr. Diggs had in *the movements of the vehicle over the preceding month*. Even assuming the vehicle had been abandoned (which it had not), such an

12

abandonment of a property interest in an object would not abandon the expectation of privacy regarding the *prior use of that object*. The government's argument is akin to saying that an individual abandons his privacy interests in his past physical movements every time he buys a new phone or trades in or loses his old one. That is clearly not what *Jones* and *Carpenter* convey.

## **Conclusion**

WHEREFORE, Defendant respectfully requests that the Court suppress all GPS location information obtained without a warrant and all additional evidence subsequently obtained in reliance on that GPS information.

Respectfully Submitted,

/s/ *Douglas E. Whitney*
Douglas E. Whitney
DOUGLAS WHITNEY LAW
OFFICES LLC
321 N. Clark Street, Suite 1301
(P)  312-279-0510
(F)  312-277-6620
doug.whitney@dwlollc.com

*Attorney for Defendant Tobias Diggs*

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2018, in accordance with LR5.9 and Fed. R. Crim. P. 49(e), I electronically filed the foregoing REPLY IN SUPPORT OF MOTION TO SUPPRESS GPS LOCATION INFORMATION OBTAINED WITHOUT A WARRANT with the Clerk of the Court using the CM/ECF system, which will send notification of such filing all counsel of record at their e-mail addresses on file with the Court.

*/s/ Douglas E. Whitney*
Douglas E. Whitney
