# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| United States of America, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 18 Cr 185-1 |
| | ) | |
| | ) | Hon. Gary Feinerman |
| Tobias Diggs, | ) | |
| Defendant. | ) | |

## DEFENDANT TOBIAS DIGGS'S ADDITIONAL RESPONSE IN SUPPORT OF HIS MOTION TO SUPPRESS GPS LOCATION INFORMATION

Defendant Tobias Diggs, through his undersigned attorney, respectfully submits this response to the Government's Surreply to Defendant's Motion to Suppress GPS Location Information (ECF #62).

## INTRODUCTION

As set forth in prior briefing, and as discussed at the December 4 hearing, the officers' warrantless seizure of GPS location information violated Mr. Diggs's rights under the Fourth Amendment, and the officers seized the GPS data without a warrant even though their own subpoenas directed them that "**Search warrant is required for GPS**." (Motion Ex. 6, at 4(emphasis in original).) The purpose of this supplemental briefing is to address whether the government can satisfy its burden of demonstrating the "good faith" necessary to escape the exclusionary rule in light of the departmental guidance the officers ignored and the judicial precedent regarding GPS tracking technology that existed at the time of the search. The answer is no, for the following reasons.

First, because the officers acted with the belief that their actions were unlawful, their unconstitutional conduct was deliberate and culpable, and thus exactly the type of conduct to which the exclusionary rule should apply. *See Davis v. United States*, 564 U.S. 229, 240 (2011). Not surprisingly, the government does not identify a single case that holds (or even suggests) that such bad faith conduct can be excused through invocation of the "good faith" exception. Second, the actions of the officers in this case were not objectively reasonable. When confronted with a subpoena that expressly prohibited the warrantless seizure, they did not "ac[t] as a reasonable officer would and should act" under the circumstances. *See United States v. Leon*, 468 U.S. 897, 920 (1984). On the contrary, they ignored and violated that departmental command without any additional analysis or consultation. Third, even disregarding the departmental guidance the officers received, the government is still unable to satisfy the "good faith" exception because it cannot identify any "binding appellant precedent" that "specifically authorized" the warrantless seizure of the GPS data. *See Davis*, 564 U.S. at 241.

For all these reasons, the government cannot satisfy its burden of establishing that the seizing officers acted in "good faith," and the GPS data should be suppressed.

## **DISCUSSION**

In its Surreply, the government continues to ignore the fact that search warrants employed by the seizing officers expressly instructed them that "**Search warrant is required for GPS.**" Notwithstanding this direction, the government argues that the Court should allow the government to use unlawfully obtained GPS data because "the government in good faith relied on case law regarding the third-

party doctrine before the Supreme Court's decision in *Carpenter*." (Surreply at 1). The government's argument cannot be reconciled with controlling Supreme Court precedent.

The Supreme Court established the circumstances under which reliance on existing judicial precedent can provide a basis to apply the "good faith" exception in *Davis v. United States*, 564 U.S. 229 (2011). Surprisingly, the government fails to cite or address this seminal case, or the requirements it established.

In *Davis,* all parties agreed that "the officers' conduct was in strict compliance with then-binding Circuit law and was not culpable in any way." *Id.* at 239-40. The Court was asked to determine whether the officers' actions, undertaken in strict compliance with circuit precedent, justified the exclusion of evidence when the circuit precedent on which they relied was subsequently overturned by the Supreme Court. On that record, the Court expanded the "good faith" exception to encompass circumstances when "the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful" and "conduct a search in objectively reasonable reliance on binding judicial precedent," because it concluded exclusion of evidence under those circumstances would have no deterrent effect. *Id.* at 238-39 (quoting *Leon*, 468 U.S. at 909). Because the officers' conduct in that case was "nonculpable [and] innocent," the officers "reasonably relied on binding Circuit precedent," and the "binding appellant precedent specifically *authorize[d]* [the] police practice" at issue, the Court determined that exclusion was inappropriate. *Id.* at 241 (emphasis in original).

None of those necessary elements is present in this case, however. On the contrary, the officers' conduct in this case was deliberate, culpable, and in bad faith;

3

it was not objectively reasonable under the circumstances; and it was not specifically authorized by any binding appellate precedent.

### A. The Good Faith Exception Cannot Be Used to Excuse the Officers' Deliberate and Culpable Conduct.

The government not only ignores the department's plain command that a warrant was required for GPS data, it ignores the fundamental purposes of the exclusionary rule and the good faith exception. It is well established that "the exclusionary rule is designed to deter police misconduct." *Leon*, 468 U.S. at 916. The rule assumes that "the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right." On the other hand, pursuant to the "good faith" exception, exclusion is not required "[w]here the official action was pursued in complete good faith." *Id.* at 919 (quoting *United States v. Peltier*, 422 U.S. 531, 539 (1975)).

The Supreme Court has repeatedly emphasized that the exclusionary rule is designed only to deter "deliberate" and "culpable" conduct. *Davis*, 564 U.S. at 238-40. For that reason, evidence should not be suppressed "when the police act with an objectively 'reasonable good faith *belief* that their conduct is lawful." *United States v. Jenkins,* 850 F.3d 912, 918 (7th Cir. 2017) (quoting *Davis v. United States*, 564 U.S. 229, 238 2011) (emphasis added)). In *Davis*, the Court stressed that it was the "absence of police culpability" that justified the application of the "good faith" exception and doomed defendant's suppression motion. *Id.* at 240.

The Supreme Court's focus on the "good faith belief" and "culpability" of the searching officers precludes the government's argument that the actual beliefs of the

searching officers are always irrelevant. (Surreply at 3.) The Court's opinion in *Davis* instructs that if, as here, the record demonstrates that the officers' conduct was deliberate and culpable, and not undertaken with a "good faith belief that it was lawful," then the good faith exception cannot apply and the seized evidence must be suppressed.[1]

The record before this Court establishes that the seizing officers repeatedly ignored Mr. Diggs's assertions of his Fifth Amendment rights, badgered him to give a statement against his will, lied to him, filed false reports, and unlawfully intercepted confidential and privileged attorney-client conversations. It further establishes that the seizing officers received express instruction that a warrant was required for GPS data, but nevertheless proceeded to seize the data without a warrant. Under these circumstances, it cannot be said that the officers' conduct was "nonculpable" or "innocent" or "blameless," or that it was undertaken with a "good faith belief" that it was lawful. *See Davis*, 564 U.S. at 238-40, 249. Accordingly, the "good faith" exception is not available to the government in this case.

Not surprisingly, the government cannot identify a single case in which officers acted with the belief that their conduct was unlawful but nonetheless were determined to have acted in "good faith" for the purposes of the exclusionary rule. That is because excusing and sanctioning such bad faith actions under the "good

---

[1] Subsequent circuit court opinions have concluded that a "good faith belief that [the] conduct was lawful" does not require that the searching officers have specific knowledge of the particular judicial precedent that authorized their conduct. *See, e.g.*, *United States v. Martin*, 906 F.3d 554, 561 (7th Cir. 2018) (the fact that officers "showed no particular awareness of [controlling precedent] is irrelevant"). But a general belief of lawfulness, without knowledge of the particular precedential foundation of that lawfulness, is entirely different than a general belief that the conduct was unlawful.

5

faith" exception would turn the exception on its head. Because the "good faith" exception was established to ensure that "innocent" and "blameless" officers would not be unjustly punished, it cannot be used to shield culpable officers who purposefully contravene department guidance in seizing evidence while believing that their conduct was unlawful.

The government's argument that the intent or subjective belief of seizing officers is always irrelevant (Surreply at 3-4) cannot be squared with the Supreme Court's instruction in *Davis* or *Leon*. Although, in a footnote, the Court in *Leon* did "eschew inquiries into the subjective beliefs of the law enforcement officers who seize evidence pursuant to a subsequently invalidated warrant," *id.* at 922 n.23, that language does not render the culpability and deliberateness of individual officers irrelevant in all circumstances. In fact, the Court in *Leon* was careful to preserve the rule of *Franks v. Delaware*, 438 U.S. 154 (1978), pursuant to which a court must inquire into whether the law enforcement officer acted in bad faith in submitting the warrant application. In such a case, when the searching officers act in a deliberate and culpable manner, the Court emphasized that suppression "remains an appropriate remedy." *Leon*, 468 U.S. at 923.

And the Court's subsequent opinion in *Davis* also makes clear that the culpability of the searching officers remains a central focus in determining the applicability of the "good faith" exception. In that case, the Court emphasized that it was "the absence of culpability" that justified the application of the "good faith" exception. *Davis*, 564 U.S. at 240. Appellate and district courts have likewise

6

concluded that the "good faith" exception is not available to officers who conduct a search in bad faith.[2]

The circuit court opinions upon which the government relies do not suggest a different result. First, as noted, none involve evidence of culpability, deliberateness, or a belief on the part of the searching officers that their conduct was unlawful. On the contrary, in *United States v. Martin*, 807 F.3d 842, 848 (7th Cir. 2015), the Seventh Circuit applied the good faith exception because the practice in question was authorized by binding appellate precedent <u>and</u> because there was "no evidence of culpable conduct on the police's part." The court expressly rejected the suggestion that "the actions or inactions of the police will never factor into the exclusionary rule analysis," emphasizing that such an inquiry is required to make the necessary determination whether the conduct in question was "deliberate" or "culpable." *Id.* at 847; *see also United States v. Reed*, 349 F.3d 457, 464-65 (7th Cir. 2003) (noting that the "purposefulness" of the officers' conduct "is tied directly to the rationale underlying the exclusionary rule").

Likewise, the Seventh Circuit's opinion in *United States v. Velazquez*, 906 F.3d

---

[2] *See, e.g., United States v. Horton*, 863 F.3d 1041, 1051 (8th Cir. 2017) ("Because *Leon* provides an exception for good faith, we apply it as long as the circumstances do not demonstrate bad faith. . ."); *United States v. Carpenter,* 819 F.3d 880, 896 (6th Cir. 2016) (Stanch, J., concurring) (suppression would not "have the requisite deterrent effect" because "there is nothing to suggest that the [officers] . . . engaged in any intentional misconduct"); *United States v. Miller*, 588 F. App'x 445, 448 (6th Cir. 2014) ("If agents exceed the scope of a valid warrant, we will only exclude the seized evidence if the unauthorized portion of the search was done in bad faith."); *United States v. Williams*, 181 F. Supp. 2d 267, 278 (S.D.N.Y. 2001) ("Thus, we would not condone a search that was conducted in pursuant to a warrant which a reasonably well trained officer could rely, but the actual officer who executed the warrant subjectively knew that it failed to state probable cause.").

7

554 (7th Cir. 2018), indicates that the "good faith" exception does not apply if, as here, the searching officers had reason to believe their conduct was unlawful. The Seventh Circuit court emphasized that the "good faith" exception applies when "the police act[ ] on an *objectively good-faith belief that their conduct was lawful at the time of the search.*" *Id.* at 560 (emphasis added). That is plainly not the case here. The seizing officers in this case were in receipt of plain and express instructions that "**Search warrant is required for GPS**." The officers' purposeful and deliberate decision to ignore this guidance and seize the GPS data without a warrant precludes application of the "good faith" exception.

### B. The Actions of the Searching Officers Were Not Objectively Reasonable.

Even if the officers' subjective belief that their conduct was unlawful did not preclude the application of the "good faith" exception, the circumstances surrounding their warrantless seizure of the GPS data make their actions objectively unreasonable and require suppression. In determining whether the officers' actions were objectively reasonable for the purposes of the good faith exception, the Court must consider "all of the circumstances" related to the seizure and determine whether "the officer is acting as a reasonable officer would and should act in similar circumstances." *Leon*, 468 U.S. at 920, 923 (quoting *Stone v. Powell*, 428 U.S 465, 539-540 (1976) (White, J., dissenting)).

Here, a reasonably well trained officer would have considered and followed his department's guidance, which expressly stated that "**Search warrant is required for GPS**." Contrary to the government's suggestion, such a conclusion does not

8

"necessitate[ ] [a] journey "into the minds of [the] police officers," *United States v. McKenzie-Gude,* 671 F.3d 452, 461 (4th Cir. 2011) (quoting *Leon,* 468 U.S. at 922 n.23), but rather simply requires "reading the documents in the record containing the undisputed, relevant facts known to the officers prior to the search." *Id.*

Accordingly, even without considering the subjective beliefs of the searching officers, it is apparent that their conduct was objectively unreasonable. For this additional reason, the government has not met, and cannot meet, its burden of establishing the "good faith" necessary to invoke that exception to the exclusionary rule.

C. **The Government Has Failed to Identify Any Binding Appellate Precedent that Specifically Authorized the Warrantless Seizure of the GPS Location Information.**

Even without considering the guidance provided to the searching officers, the government's efforts to invoke the "good faith" exception still fail because the government has failed to satisfy (or even address) the "exacting analysis" of the Supreme Court's decision in *Davis*, which requires the government to demonstrate that "binding appellant precedent specifically *authorize[d]* [the] police practice" at issue. *Id.* at 241 (emphasis in original); *Jenkins,* 850 F.3d 912, 920 (7th Cir. 2017) (refusing to apply the "good faith" exception because government failed to satisfy the "exacting analysis" of *Davis* and binding appellant precedent did not "specifically authorize[ ]" the search); *Martin*, 807 F.3d at 848 (7th Cir. 2015) (concluding that the government cannot invoke *Davis* unless "binding appellate precedent authorized the

9

police's conduct").³

In applying the "good faith" exception in *Davis*, the Court emphasized that "[t]he search incident to [ ] arrest in this case followed the Eleventh Circuit's . . . precedent to the letter." *Id.* at 239. That is not the case here, as the government cannot identify a single post-*Jones* decision that authorized the government to employ GPS tracking technology without first obtaining a warrant.

The government first argues that the search should be allowed under the good faith exception because a number of courts had held that a defendant "did not have a reasonable expectation of privacy in location information broadly speaking." (Surreply at 1). The government's legal analysis is wrong, and beside the point. As the Court recognized at the December hearing, and as expressly acknowledged by the Seventh Circuit, at the time the warrantless seizure occurred in this case a majority of Supreme Court justices had already concluded that the "use of GPS technology constitutes a Fourth Amendment search." *United States v. Caira*, 833 F.3d 803, 808 (7th Cir. 2016) (7th Cir. 2016) (citing concurring opinions of Sotomayor and Alito). Accordingly, the government's reasonable expectation of privacy argument provides no basis to invoke the "good faith" exception.

The government next argues that the "good faith" exception should apply because "law enforcement here had no reason to believe that *Jones* had changed the contours of the third-party doctrine with respect to GPS location information."

---

³ The authorization requirement regarding binding appellate precedent is consistent with the Supreme Court's opinion in *Illinois v. Krull*, 480 U.S. 340 (1987), in which the Court applied the "good faith" exception when a statute authorized the searching technique at the time it was employed.

(Surreply at 3.) As to the third-party doctrine, however, neither the Seventh Circuit nor any other court had "specifically authorized" the collection of GPS data without a warrant. And unlike the CSLI at issue in *Carpenter* and *Curtis*, the warrantless collection of GPS data was not authorized by any statute.

The government attempts to rely on cases addressing CSLI or other non-GPS technology that reveals (to a much less precise extent) location information. But those opinions expressly distinguished GPS data, because its collection was not authorized by statute and because it implicated greater privacy concerns than the CSLI or internet location information in those cases. Accordingly, none of those cases can fairly be characterized as "binding appellate precedent" that "specifically authorized" the warrantless seizure of GPS tracking data, as required by the Supreme Court's decision in *Davis*.[4]

The government relies primarily on the Sixth Circuit's decision in *Carpenter*, 819 F.3d 880 (6th Cir. 2016), *reversed*, 138 S. Ct. 2206 (2018), but that case did not involve GPS technology, and the court in fact went to great lengths to distinguish GPS data from CSLI data. The court specifically noted that "unlike Jones—this is not a GPS-tracking case." 819 F.3d at 889. It also noted that "GPS devices are accurate within about 50 feet, which is accurate enough to show that the target is located within an individual building," and which "might tell a story of trips to 'the strip club,

---

[4] That is particularly true in light of the fact that the Supreme Court in *Carpenter* stressed that application of the third-party doctrine to location information technology would require a "significant extension" of that doctrine to reach such data. 138 S. Ct. at 2219. While some appellate courts, such as the Sixth Circuit in *Carpenter*, had extended the third-party doctrine to reach CSLI, none had extended the doctrine to reach the fundamentally different GPS tracking technology at issue in this case.

11

the criminal defense attorney, the by-the-hour motel, the union meeting, the mosque, synagogue or church, the gay bar and on and on[.]'" *Id.* (quoting *Jones*, 132 S. Ct. at 956 (Sotomayor, J., concurring)). Most importantly, the court emphasized that "cell-site data cannot tell that story" because it is "as much as 12,500 times less accurate than the GPS data in *Jones*." *Id.*

The government's reliance on the Seventh Circuit's pre-*Carpenter* decision in *United States v. Caira*, 833 F.3d 803 (7th Cir. 2016), is also misplaced because it likewise distinguished GPS data from the I.P. address information at issue in that case. The Seventh Circuit emphasized that the privacy interests implicated by I.P. address information were not nearly as compelling or in need of protection as GPS location information, and it labeled the defendant's attempted analogy to GPS tracking as an "unhelpful exaggeration." *Id.* at 808.

Accordingly, neither of these opinions can be characterized as "binding appellate precedent" that "specifically authorized" the warrantless seizure of GPS data. And the government can identify no such other precedent. At best, in the wake of *Jones*, the law regarding the warrantless seizure of GPS data held by a third party was unsettled, but this is not sufficient to satisfy the "exacting analysis" of *Davis*. *See Martin*, 807 F.3d at 847 (applying "good faith" exception because pre-*Jones* law regarding GPS was settled and, accordingly, there was no reason to question whether the police's conduct was deliberate or reckless). As in *Jenkins*, the government is asking the Court to "extend the applicability" of cases addressing different technology to GPS data. But the Seventh Circuit made clear in that case that such arguments for extension of existing precedent are insufficient to satisfy the "exacting analysis"

of *Davis* and permit application of the "good faith" exception. *Jenkins*, 850 F.3d at 920.

## Conclusion

WHEREFORE, Defendant respectfully requests that the Court suppress all GPS location information obtained without a warrant and suppress all additional evidence subsequently obtained in reliance on that GPS information.

Respectfully Submitted,

/s/ *Douglas E. Whitney*
Douglas E. Whitney
DOUGLAS WHITNEY LAW
OFFICES LLC
321 N. Clark Street, Suite 1301
(P)  312-279-0510
(F)  312-277-6620
doug.whitney@dwlollc.com

*Attorney for Defendant Tobias Diggs*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2019, in accordance with LR5.9 and Fed. R. Crim. P. 49(e), I electronically filed the foregoing RESPONSE IN FURTHER SUPPORT OF HIS MOTION TO SUPPRESS GPS LOCATION INFORMATION with the Clerk of the Court using the CM/ECF system, which will send notification of such filing all counsel of record at their e-mail addresses on file with the Court.

*/s/ Douglas E. Whitney*
Douglas E. Whitney
