UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | 18 CR 185 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| TOBIAS DIGGS, MARVON HAMBERLIN, and JOSHUA McCLELLAN, | ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

On the motion of Defendant Tobias Diggs, the court suppressed under the Fourth Amendment certain Global Positioning System ("GPS") location data obtained by the Hinsdale police, but left open the question whether there were any fruits of the GPS data that also should be suppressed. Docs. 77-78 (reported at 385 F. Supp. 3d 648 (N.D. Ill. 2019)). Familiarity with the court's opinion is assumed. The Government moves for reconsideration of the suppression order, Doc. 82, and Diggs and Defendant Joshua McClellan move to suppress what they say are the fruits of the unlawfully obtained GPS data, Docs. 85-86. Both motions are denied.

I.  **The Government's Motion for Reconsideration**

The Government's principal ground for reconsideration is that the GPS data was obtained as a result of a private search, not a government search. Doc. 82 at 2-5. The Government did not make that argument during briefing on the motion to suppress. Docs. 55, 62. The Government accordingly forfeited the argument, which it may not now press on a motion for reconsideration. *See Gates v. Syrian Arab Republic*, 755 F.3d 568, 578 (7th Cir. 2014) ("[The] plaintiffs made this argument for the first time in their motion for reconsideration of the Illinois district court's turnover order regarding the BCS funds. That was too late to raise a new legal theory that could

1

have been raised earlier in the case. Accordingly the argument is forfeited.") (citation omitted), *overruled in other part by Rubin v. Islamic Republic of Iran*, 830 F.3d 470 (7th Cir. 2016); *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment.").

In an effort to excuse its forfeiture, the Government notes that the Seventh Circuit issued *United States v. Adkinson*, 916 F.3d 605 (7th Cir. 2019), a private search case, after briefing closed on the motion to suppress. Doc. 82 at 2. That excuse fails on two separate grounds. First, the Seventh Circuit issued *Adkinson* three months before this court's ruling on the motion to suppress, and the Government does not (and could not) explain why it did not bring *Adkinson* to the court's attention during those three months. Second, and in any event, *Adkinson* simply applied long-settled law regarding the private search doctrine. *See Adkinson*, 916 F.3d at 610 (citing *United States v. Shahid*, 117 F.3d 322, 325 (7th Cir. 1997), and *United States v. Aldridge*, 642 F.3d 537, 541 (7th Cir. 2011)). Accordingly, the Government easily could have cited then-existing precedent, including *Shahid* and *Aldridge*, to press a private search argument during briefing on the motion to dismiss; it did not need *Adkinson* to do so.

The Government's second ground for reconsideration is that Header's Car Care had apparent authority to turn over the GPS data to the Hinsdale police. Doc. 82 at 5-7. The Government forfeited that argument as well by failing to adequately press it during briefing on the motion to suppress. The Government made only two arguments in opposing the motion to suppress: (1) under the third-party doctrine, Diggs did not have a reasonable expectation of privacy in the GPS data; and (2) Diggs abandoned any expectation of privacy he might have had by abandoning the Lexus SUV to which the GPS data was tied. Doc. 55 at 1, 5-14. Granted, the

Government inserted a three-sentence paragraph regarding apparent authority in the middle of its analysis of the third-party doctrine. *Id*. at 8. But that stray paragraph was insufficient to preserve the apparent authority argument. *See M.G. Skinner & Assocs. Ins. Agency v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived … .").

## II.  Defendants' Motion to Suppress Fruits of the GPS Data

Invoking the fruit of the poisonous tree doctrine, *see Wong Sun v. United States*, 371 U.S. 471 (1963), Diggs and McClellan seek suppression of the evidence that they say was obtained as a result of the GPS data that the police unlawfully obtained on April 4, 2017. Doc. 85. Specifically, Diggs and McClellan contend that evidence obtained from the execution of several subsequent search warrants—(1) the April 4, 2017 search warrant for McClellan's iPhone; (2) the April 5, 2017 search warrant for the Lexus SUV; (3) the April 26, 2017 and May 1, 2017 search warrants for Instagram and Facebook account information believed to be associated with Diggs and McClellan; and (4) the May 2, 2017 search warrant for Diggs's DNA—are unlawful fruits that must be suppressed because the applications for those warrants referenced and relied upon the GPS data. *Id*. at 1-2.

Both sides agree on the governing law. *Id*. at 3; Doc. 95 at 2, 12. "[U]nder the independent source doctrine, when a search warrant is obtained, in part, with tainted information, [the court] ask[s] two questions. First, would the warrant have been issued even without considering the tainted information? And, second, was the officer's decision to seek the warrant prompted by the illegal search?" *United States v. Bell*, 925 F.3d 362, 370 (7th Cir. 2019). "The answer to the first part of the inquiry is relevant to the second [because] once an officer has probable cause to believe a piece of property contains evidence of a crime, it is hard to see how an additional illegal search would alter the officer's desire to examine the property." *Id*. at 371.

3

Only when the answer to both questions is yes is the evidence untainted and thus not inadmissible as the fruit of the tainted information. *See id*. at 372 ("We conclude that both parts of the independent source test have been met here, and that the district court correctly denied Bell's motion to suppress.").

It is plainly apparent from the warrant application for McClellan's iPhone, Doc. 85-1 at 2-12, that the warrant would have issued even had the application not referenced the GPS data. The warrant application is just over ten pages and mentions the GPS data near the very end, almost as an afterthought. *Id*. at 10-11. The other matters set forth in the application more than established the probable cause necessary to support a warrant to search the iPhone: a security video showed that a silver blue metallic Lexus RX SUV was parked in front of Razny Jewelers in Hinsdale when it opened on March 17, 2017; the video showed three men exit the vehicle, enter the store, and rob it; on March 18, a reliable, confidential source reported that Diggs was one of the robbers, that Diggs was known to use a silver blue metallic Lexus RX SUV with Michigan plates, and that Diggs possessed property that had been stolen from Razny Jewelers on March 17; the Lexus SUV was registered in the name of Devinn Adams, who at the time was in a romantic relationship with Diggs; Diggs and McClellan were in the Lexus SUV when it was stopped by Cicero police on March 14; Adams told law enforcement that Diggs called her the evening of March 17 to say, "you need to come get the car" and "[i]'s all over the news"; Adams further told law enforcement that Diggs admitted to her that he "hit the J-Spot" and had to get rid of the vehicle; on March 27, a reliable, credible source called to report that stolen watches from the Razny Jewelers robbery were being stored in a basement utility room at a particular address on East 49th Street in Chicago; that source identified Marvin Hamberlin (Diggs's and McClellan's co-defendant) as one of the men who committed the robbery; an officer recovered a

metal lock box and two firearms hidden in the utility room's ceiling; another source reported that he had observed Hamberlin, Diggs, and McClellan inside that utility room; the lock box contained nine watches that had been stolen from Razny Jewelers; cell phone records from the morning of the robbery showed that Diggs had received calls from McClellan and McClellan's brother; and on April 3, McClellan sold to another jewelry store a 1.80 caret diamond ring that had been stolen from Razny Jewelers. *Id.* at 3-11.

Given all this information, the GPS data was entirely superfluous to the issuance of the warrant—the equivalent of powdered sugar atop a handful of cherries atop an already iced cake. The warrant certainly would have issued without the GPS data. *See Bell*, 925 F.3d at 370-71; *U.S. v. Etchin*, 614 F.3d 726, 737-38 (7th Cir. 2010) (affirming the district court's refusal to exclude evidence as the illegal fruit of an unlawful entry where the "agents always intended to obtain a warrant" and "the information that was obtained in the illegal entry and then mentioned in [the] [d]etective['s] … affidavit was not necessary to the determination that probable cause supported the warrant"). And as to the second inquiry in the fruits analysis, the police would have sought a warrant to search the iPhone even without the GPS data. The police obtained the iPhone during a search of McClellan's residence on April 4, 2017, and the iPhone warrant application was submitted that day. Doc. 85-1 at 11. The police had applied for the warrant to search McClellan's residence on April 3, the day before the GPS data was obtained. Doc. 100-1. It is inconceivable that the police, having the information described above and having recovered McClellan's iPhone during the search of his residence, would not have sought a warrant to search the iPhone. The GPS data did not prompt the police to seek that warrant. *See Bell*, 925 F.3d at 371-72; *Etchin*, 614 F.3d at 737-38.

5

It follows that the information from McClellan's iPhone should not be suppressed as the fruit of the unlawfully obtained GPS data. The same holds for evidence obtained from the warrants to search the Lexus SUV, Facebook and Instagram accounts believed to be associated with Diggs and McClellan, and Diggs's DNA, as the applications for those warrants relied on the same information set forth in the iPhone warrant application. Doc. 85-1 at 16-27, 29-92, 94-108; *see Bell*, 925 F.3d at 372-73 (after rejecting a fruits challenge to evidence obtained from executing one warrant, rejecting a fruits challenge to evidence obtained from executing a second warrant where the application for the second warrant relied on the same information as the application for the first warrant). And because there is no possible doubt that the police would have sought all four warrants even absent the GPS data, the court rejects Diggs and McClellan's request for an evidentiary hearing, Doc. 97 at 3-4, to determine the impact of the data on the officers' decision to seek the warrants. *Cf. U.S. v. Mullins*, 803 F.3d 858, 861-65 (7th Cir. 2015) (affirming the district court's conclusion that a *Franks* hearing was unnecessary where "sufficient allegations existed warranting the search irrespective of the affiant's alleged errors" in the challenged search warrant application).

January 14, 2020

_____
United States District Judge