UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 18 CR 185-1 |
| v. | ) | |
| | ) | Judge Gary Feinerman |
| TOBIAS DIGGS | ) | |

# GOVERNMENT'S POSITION PAPER REGARDING SENTENCING FACTORS

*One of them came around the corner, pushed me to the ground, handcuffed me behind my back, and started asking me questions. And I couldn't understand what he was saying, and he had me by the back of my hair. And every time he asked me a question and I didn't answer him, he would smash my face into the ground. And then the last time I didn't answer a question, he hit me in the head with the gun.*

– 71-year-old sales associate, Lois Versetto

*Well, I was going down. The one person pointed the gun to my face and said, "Don't move. You know, I'll shoot you in the face. Don't move."*

– 59-year-old retired police officer and security guard, Ralph Tessman

*So, when I was in the back room, he came to me. He grabbed me and put a gun to my head … [He] put me in the bathroom and turned off the lights and locked the door from the inside, so basically locked himself out, and said, "If you come out of here, I will kill you."*

– store employee Hannah Niemier

*I was looking at my phone, and someone from behind said – asked me, you*

*know, "Where's the exit?" … And I turned around, and there was a man standing there pointing a gun at me … I tried to point him towards it, but then he takes me and has me lead him to the exit.*

– Starbucks employee Scott Schletz

Those words constitute the sworn testimony of the victims of the violent takeover robbery of Razny Jewelers in Hinsdale on March 17, 2017. All without exaggeration and corroborated by surveillance video. Diggs was personally responsible for the violence towards Ms. Versetto and Schletz and responsible for the actions of his cohorts for Mr. Tessman and Ms. Niemier. After being found guilty by a jury of his peers, Diggs comes before the court for sentencing on this violent robbery and the associated charges.

Taking into account the principles set forth in the Sentencing Guidelines Manual and 18 U.S.C. § 3553(a), the government recommends a mid-guideline sentence of 216 months' imprisonment (84 months consecutive to 132 months) to be followed by three years of post-release supervision and the payment of the mandatory $400 special assessment.

I. **ADVISORY GUIDELINES CALCULATION**

The government agrees with the calculations from the United States Probation Department. Using the November 2018 Guidelines Manual, they calculated defendant Diggs' guidelines range as follows:

Counts 1 and 2 (Group)

| | | |
|---|---|---|
| **20** | Base offense level for a violation of Hobbs Robbery pursuant to §2B3.1. |
| **+2** | Bodily injury to a victim (Tessman) pursuant to §2B3.1(b)(3)(A). |
| **+4** | An individual (Schletz) was abducted to facilitate escape pursuant to §2B3.1(b)(4)(A). |
| **+1** | A firearm was taken (from the person of Tessman). |
| **+2** | The loss was more than $95,000 but less than $500,000 ($402,164) pursuant to §2B3.1(b)(7)(C). |
| **+2** | The offense involved the use of body armor pursuant to §3B1.5(2)(A). |
| **31** | **Total offense level** |

Count 3

The guideline range is 84 months to run consecutively to any sentence given on the other charges.

Count 4

| | |
|---|---|
| **14** | Base offense level after cross reference from §2B1.1(c)(1) to §2K2.1(a)(6) as the defendant was a prohibited person at the time of the offense. |
| **+2** | Use of three firearms pursuant to §2K2.1(b)(1)(A). |
| **+2** | Theft of a firearm pursuant to §2K2.1(b)(4)(A). |
| **+2** | The offense involved the use of body armor pursuant to §3B1.5(2)(A). |
| **20** | **Total offense level** |

No additional levels are added so the total offense level is 31. PSR at 8-12. Defendant has two criminal history points and is a Category II. PSR at 13-15.

The Probation Department calculated that defendant's guideline range is 121 to 151 months' incarceration. PSR at 25. Any sentence given in must run consecutive to any sentence given for Count 3, which carries a guideline sentence of 84 months. Therefore, the defendant's guideline range is 205 to 235 months' incarceration.

In his sentencing memo, defendant objects to certain guideline enhancements found by the Probation Department. The objections should be overruled.

**Guideline enhancement for Abduction Pursuant to §2B3.1(b)(4)(A)**

United States Sentencing Guidelines §2B3.1(b)(4)(A) allows for a four-point enhancement to a base offense level for robbery if any person was abducted to facilitate commission of the offense or to facilitate escape. Here, Diggs pointed a gun at Scott Schletz while he was seated in a Starbucks break room and walked him, with a gun to the back of his head to a back door exit and out the door. Schletz was forced to lay on the ground until Diggs and his cohorts escaped the area. Diggs' assertion that the movement did not happen between different locations and that this is not an abduction to facilitate an escape is misguided.

First, it should be noted that Starbucks and Razny Jewelers have separate entrances and back exits into and out of their respective stores. The back exits lead to hallways that has a shared street exit. When Diggs and the other robbers left the back exit of Razny, they entered a hallway and walked to the Starbucks break room. From there, video of the abduction and testimony from Mr. Schletz show that he was abducted by Diggs and his cohorts to facilitate their escape from Razny.

According to Mr. Schletz,

> The individual asked me where the exit is; and I tried to point him towards it, but then he takes me and has me lead him to the exit. Two others joined as we were leaving, and he led me out through the back hallway. I kept them from going the wrong direction, got them out through the back door. They then asked how to get away from -- like how to get from there, and I pointed them which direction the streets were. Then they had me get down on the ground, and then they ran off; and I went back into the building.

The video of the incident corroborates this account.





Case: 1:18-cr-00185 Document #: 305 Filed: 02/17/22 Page 5 of 13 PageID #:4244

After the still shot above, Mr. Schletz, Diggs and his cohorts left the camera view. Under a minute later, Mr. Schletz returned to the building.

In *United States v. Eubanks*, 593 F.3d 645 (7th Cir. 2010), cited by defendant, during one of a string of robberies committed by Eubanks and his co-defendants, after assaulting an employee of the beauty supply store being robbed, one of the co-defendants forced the store employee to a back room to retrieve surveillance video. In a separate robbery of a jewelry store, Eubanks dragged a store employee about six feet, from the back room of the store to the front room. At sentencing, pursuant to USSG §2B3.1(b)(2)(4), the District Court added four points to the offense level for each robbery. Eubanks appealed. *Eubanks*, 593 F.3d at 648-49.

In finding that the enhancements did not apply, the Seventh Circuit reasoned that the applicability of the enhancement turned on whether "the store employees were forced to accompany the defendants to 'a different location.' If the answer to that question is yes, then an abduction occurred." *Id.* at 652. In making its decision, the Court recalled prior cases where restraint was more applicable than abduction. See *U.S v. Carter*, 410 F.3d 942, 954 (7th Cir. 2005) (forcing a bank teller at gunpoint from the back vault to her drawer against her will was restraint); *U.S. v. Nelson*, 137 F.3d 1094, 112 (9th Cir. 1998) (ordering a jewelry store employee and customer to the back room at gunpoint … constitutes physical restraint). *Eubanks*, 593 F.3d at 653. In the case at hand, if the government were seeking the four-point enhancement for the movement of the Razny store employees – Mr. Tessman, Ms. Versettto, and Ms. Niemier – by the defendant and his cohorts, then the aforementioned cases would

6

control. However, in this case, Diggs and the defendants did more than move a victim from one part of a store to another.

In the case at hand, the actions of the defendants fall more in line with the next set of cases cited by the Court in *Eubanks* – *U.S v. Taylor*, 128 F.3d 1105, 1110-11 (7th Cir. 1997) (forcing a bank employee at gunpoint from a parking lot into the bank warranted a four-level enhancement for abduction; *U.S. v. Davis*, 48 F.3d 277, 279 (7th Cir. 1995) (forcing victim at gunpoint from parking lot to inside the credit union satisfied abduction requirement). *Eubanks*, 593 F.3d at 653.

Surely, if forcing a victim by gunpoint from a parking lot into a structure is abduction (as conceded by defendant) then the opposite of forcing a victim from inside a structure to a parking lot to facilitate escape is also abduction. Here, Mr. Schletz was forced from his seat, out the door and into an alley. The purpose of the forced movement by Diggs and his cohorts on Mr. Schletz was to show them how to escape the building. In line with Seventh Circuit precedent, he was abducted to facilitate escape, and the four-point enhancement should be applied.

**Guideline Enhancement for Body Armor Pursuant to §3B1.5(2)(A)**

According to Ralph Tessman, during the robbery (a crime of violence) one of the robbers had on body armor:

> And I believe the guy that was initially tackling me, as we're going backwards, had some type of vest or body armor as well because I was wearing my vest; and I grabbed on to him as we were going backwards, and I felt that what I believed to be a vest … It's a ballistic vest inside a carrier which you can wear, police officers have as well as security guards, and it absorbs the impact of a -- usually of a handgun.

7

Additionally, there was grand jury testimony from a witness stating that she was present when Diggs and the other robber purchased a bulletproof vest from an individual at a gas station prior to the robbery. This testimony corroborates that body armor was present and worn during the robbery. The two-point enhancement should be applied.[1]

II. **THE SECTION 3553(A) FACTORS WARRANT A GUIDELINE SENTENCE OF 216 MONTHS' IMPRISONMENT (MANDATORY 84 MONTHS CONSECUTIVE TO 132 MONTHS) TO BE FOLLOWED BY THREE YEARS' POST-RELEASE SUPERVISION**

    a. **NATURE AND CIRCUMSTANCES OF THE OFFENSE AND HISTORY AND CHARACTERISTICS OF THE DEFENDANT**

As was detailed at trial, this was a well-planned out robbery of Razny Jewelers in Hinsdale on March 17, 2017. Diggs and the others got together the morning of the robbery, using the getaway vehicle to pick each other up, drove out to Hinsdale, and got to Razny minutes before opening. They were able to find a park right outside the store, got out of the car with masks, gloves, and drawn firearms. They had a walkie talkie system set up so the getaway driver could communicate with the people inside the store. They had handcuffs to subdue the victims and bags to put the jewelry inside. They had a plan to execute the robbery and did so quickly.

The robbery itself was brutal and violent. A security guard was tackled onto a table, handcuffed, and robbed of his personal firearm; an elderly sales associate had her head constantly pushed into the floor, was handcuffed, hit in the head with a

---

[1] In the Government's Version of the offense, the government requested a 4-point enhancement pursuant to §3B1.5(2)(B). The government is no longer making that argument or request. The proper enhancement is a two-point enhancement pursuant to §3B1.5(2)(A) and that is what the government seeks here.

8

firearm, and dragged to a back room by her hair, by Diggs; a sales associate that was simply filling in that day had a gun pointed at her head, was locked in a bathroom, and told that if she left, she would be killed; and a Starbucks employee on break looking at his phone had a gun pointed at his head by Diggs, was forced to lead him and his cohorts out of the building, and told to lay on the ground while they escaped. The victims were traumatized and have to live with the memories of this robbery for the rest of their lives. Diggs and his cohorts escaped with jewelry worth over $400,000.

After the robbery, Diggs called his child's mother, who was at home in Michigan with their newborn child, and let her know that he had used her car in connection with a jewelry store robbery when he told her she, "needed to get back to the city because he had busted a J move or a J spot." When his child's mother could not get back to the city from Michigan, Diggs gave the getaway car to his other child's mother, who was pregnant at the time, so she could drive it to work. After work, she drove the car to her home. Though she called Diggs numerous times to pick up the vehicle, he never came, and the car sat in her garage until it was found by law enforcement.

Though he argues that at his core, he is not a violent person and that he has always been a loving and caring person, his actions surrounding this incident show the opposite. Two individuals that know him well described him as compassionate – feeling or showing sympathy and concern for others – but his actions are far from compassionate. This was not a crime of desperation, fear, and pressure of having to

9

support two children. Diggs did not steal money or food. He chose a violent way to steal jewelry worth $400,000. Based on his actions, Diggs has shown himself to be a violent and selfish individual that does not care about anyone but himself.

The terror suffered by the victims at the hands of Diggs and his cohorts did not show his compassion. Where was his compassion when he struck a woman in her head with a firearm because she could not answer his question? Where was his compassion when he dragged her to a back room by her hair? The only person he had compassion for was himself.

Diggs' letters also talk about the love he has for his children. The government does not doubt that. However, where was the caring and understanding for their mothers? Diggs used a car registered to his newborn child's mother to commit a robbery with firearms. He then asked her to leave their newborn child in Michigan and come down to Chicago to pick it up, immediately after it had been linked to an armed robbery. When that did not work, he offered the car to his other child's mother, who at that time was pregnant with his child. Not only did he give her the wanted car to drive, he also never came to pick it up. What if either of them had been caught driving a car that was just used in a violent, armed, takeover robbery of a jewelry store? Where is the loving, compassionate person in this instance?

There is no denying that Diggs had a rough childhood. The unspeakable pain of losing family members must have taken a toll on him. However, instead of directing that energy into his music (like family and friends say he had done in the letters), Diggs decided to inflict pain and harm on others for his own benefit.

There is no defense to Diggs' behavior in this case. The facts and circumstances of the case combined with the characteristics of the defendant warrants a significant sentence. A sentence of 216 months' imprisonment (84 months consecutive to 132 months) to be followed by three years of post-release supervision recognizes the serious nature of the defendant's conduct while providing just punishment.

    b. **NEED FOR SENTENCE TO REFLECT SERIOUSNESS OF OFFENSE, TO PROMOTE RESPECT FOR THE LAW, TO PROVIDE JUST PUNISHMENT, TO PROVIDE ADEQUATE DETERRENCE, AND TO PROTECT PUBLIC FROM FURTHER CRIMES OF THE DEFENDANT**

A sentence of 216 months' imprisonment (84 months consecutive to 132 months) to be followed by three years of post-release supervision is necessary in this case for a variety of reasons. The seriousness of the offense and the need to provide just punishment to the defendant calls for a guideline sentence. Assaulting people with firearms and stealing jewelry worth over $400,000 needs to be properly punished. Specific and general deterrence call for a guideline sentence so the defendant and others in similar circumstances know that a takeover robbery is not the way to solve any problems.

In this robbery, people not only got hurt physically, but they were emotionally destroyed. This robbery was the last day that Mr. Tessman worked at Razny – he was not set to retire or stop working before the robbery. Ms. Versetto did not go back to work for three and a half to four weeks later. Ms. Niemier was out of work for a week after the robbery and tried to return to a different store. After only working a few days, she left Razny Jewelers after customers consistently came in asking about the robbery.

A just sentence of 216 months' imprisonment (84 months consecutive to 132 months) to be followed by three years of post-release supervision for defendant will provide both specific and general deterrence to defendant and the public, respectively, would be the best way to reinforce to the defendant the need to respect the law, provide just punishment, deter the defendant from his behavior, and protect the public from further crimes of the defendant.

### III. RECOMMENDED CONDITIONS OF SUPERVISED RELEASE

Given the circumstances of the offense and the history and characteristics of defendant, the government recommends the maximum term of three years' supervised release. Upon release from custody, defendant would benefit from being under the watchful eye of the Court.

The applicable mandatory conditions of supervised release under 18 U.S.C. § 3583(d) are set forth on page 26 of the PSR. The government has no objection to the mandatory conditions of release set forth in conditions (1), (2), (5) and (6). Those conditions are applicable as it will assist the defendant's return to the community after his period of confinement.

The government has no objection to the recommended discretionary and special conditions of Supervised Release set forth on pages 26 through 31 of the PSR and concurs with the probation officer's rationale for these conditions. Specifically, the government agrees that discretionary conditions (4), (6), (8), and special conditions (1), (2), (3), (6), and (7) promote the statutory factors of affording adequate deterrence to criminal conduct, protecting the public from further crimes by the

defendant, and assisting the defendant in reintegrating into society upon his release. Providing defendant with adequate job training will help him achieve employment, which will be crucial in helping prevent recidivism.

The government further agrees that discretionary conditions (7), (8), (9), (14), (15), (16), (17), (18), and (23) promote the statutory factor of allowing for effective monitoring of defendant during any supervised release term imposed.

## IV. CONCLUSION

For the reasons set forth above, and in consideration of the factors enumerated under 18 U.S.C. § 3553(a), the government respectfully requests that this Court impose a Guideline sentence of 216 months' imprisonment (84 months consecutive to 132 months) to be followed by three years of post-release supervision.

    Respectfully submitted,

    JOHN R. LAUSCH, JR.
    United States Attorney


    By: /s/ *Albert Berry III*
    ALBERT BERRY III
    Assistant United States Attorney
    219 S. Dearborn Street, 5th Floor
    Chicago, Illinois 60604
    (312) 886-7855

Dated: February 17, 2022